# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SEAN K., | ) |
| Plaintiff, | ) No. 18 cv 7369 |
| v. | ) Magistrate Judge Susan E. Cox |
| ANDREW M. SAUL, Commissioner of the Social Security Administration[1], | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sean K.[2] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability benefits. Plaintiff has filed a Memorandum in Support of Summary Remand, which the Court construes as a motion for summary judgment [17]; the Commissioner has filed a cross-motion for summary judgment [dkt. 24]. As detailed below, the Court grants Plaintiff's motion for summary judgment [dkt. 17], denies the Commissioner's motion for summary judgment [dkt. 24], and remands this matter for further proceedings.

**I.    Background**

    **a.    Procedural History**

Plaintiff applied for supplemental security income ("SSI") Title XVI of the Social Security Act on September 30, 2014, alleging disability beginning on April 10, 2013. [R. 20.] After his applications were denied initially and on reconsideration, Plaintiff requested an administrative hearing. *Id.* On April 14, 2017, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") Margaret A. Carey. [R. 43-84.] A vocational expert ("VE") also testified. *Id.* On September

---

[1]    As of June 4, 2019, Andrew M. Saul is the Commissioner of the Social Security Administration. Pursuant to Federal Rule Civil Procedure 25(d), he is hereby substituted as Defendant.

[2]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

25, 2017, the ALJ determined that Plaintiff was not disabled. [R. 20-34.] On September 4, 2018, after a review of the ALJ's decision, the Appeals Council issued a decision affirming that Plaintiff had not been under a disability from his alleged onset date to the date of the ALJ's decision. [R. 1-6.] Thus, the Decision of the Appeals Council is the final decision of the Commissioner. Plaintiff filed an action in this court on November 6, 2018, seeking review of the Commissioner's decision. [Dkt. 1.]

    b.    **Relevant Medical Background**

Plaintiff was born in 1972 and was 42 years old on his alleged disability onset date. [R. 32.] Plaintiff has been diagnosed with peripheral neuropathy/polyneuropathy and degenerative disc disease. [R. 353, 507, 508, 516, 521, 641, 798, 801, 805, 806, 809, 813, 824, 829.] A July 2014 MRI of his lumbar spine showed numerous abnormalities including a bulging disc at the L4-5 level that "abuts the bilateral L5 nerve roots" and a "suspected annular fissure at L5-S1." [R. 353.] A December 2014 EMG showed a "markedly abnormal study indicative of a chronic, severe, nearly complete, generalized, large fiber, peripheral sensorimotor, mixed axonal and demyelinating polyneuropathy with ongoing denervation in the intermediate and distal lower extremity areas" and "partial conduction block upon stimulating the left ulnar nerve above and below the elbow." [R. 509-11.]

Neurological exams with Dr. Sandeep Aggarwal, M.D., his treating neurologist, showed decreased motor strength in the intrinsic muscles of Plaintiff's left hand and both feet, decreased pinprick sensation from his hands to his forearms and from his toes to mid-tibia, absent vibration in his feet, reduced proprioception in his toes, reduced temperature from his hands to his forearms and from his toes to mid-tibia, positive Romberg tests, an inability to heel/toe walk and tandem walk, an antalgic gait, and decreased reflexes to his ankles. [R. 507, 516, 521, 801, 813, 828.] Plaintiff was prescribed a cane by Dr. Aggarwal, and Plaintiff testified he always uses it to walk (even short distances) since 2013. [R. 25, 72, 507.] However, Plaintiff did not bring his cane to the March 17, 2015 consultative medical examination with Dr. Roopa Karri, M.D., and he told Dr. Karri he had only been using a cane every day for the prior 6 months. [R.637-38.]

### c. The ALJ's Decision

On September 25, 2017, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 20-34.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 30, 2014. [R. 22.] At Step Two, the ALJ found that Plaintiff had the severe impairments of peripheral neuropathy/polyneuropathy and degenerative disc disease. *Id.* The ALJ also detailed Plaintiff's nonsevere impairments of obesity, diabetes, bilateral orchidopexy following testicular torsion, and a left ankle joint fracture status post repair surgery. [R. 22-23.]

At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 23-24.] In reaching this conclusion, the ALJ considered Listing 1.04 for disorders of the spine and Listing 11.14 for peripheral neuropathy. *Id.*

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to perform sedentary work with the following nonexertional limitations: no ladders, ropes, or scaffolds; no kneeling, crouching, or crawling; only occasional stairs, ramps, and balancing; no exposure to unprotected heights or moving mechanical parts; frequent handling and fingering on the non-dominant left; a sit/stand option at will; and use of a cane for ambulating. [R. 24.] At Step Four, the ALJ determined that Plaintiff was capable of performing his past relevant work as a dispatcher security guard, which she identified as DOT #372.167-010 (sedentary exertional level as actually performed; SVP 6). [R. 31-32.] The ALJ also made alternate findings that Plaintiff could perform other sedentary work existing in significant numbers in the national economy. [R. 33.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. *Id.*

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last

---

[3] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

3

insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v.*

*Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III. Discussion

Plaintiff alleges several problems with the ALJ's opinion. Among them, Plaintiff alleges his spinal impairments satisfy Listings 1.04(A), and that the ALJ's analysis of this listing is not supported by substantial evidence. We agree.

As an initial matter, as several courts before us have noted, "[t]he Judges of this Court are not doctors," and hence, "federal courts are not medical specialists." *Martin v. Gober*, 10 Vet. App. 394, 396 (1997); *Logan v. Unicare Life & Health Ins., Inc.*, 2007 WL 1760759, at *5 (E.D. Mich. June 13, 2007) (citing *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622-23 (6th Cir. 2006) (signals omitted)); *see also Hodges v. Bowen*, 1988 WL 35607, at *3 (N.D. Ill. Apr. 14, 1988) (ALJ, Appeals Council, and courts are not medical experts); *Achey v. Crete Carrier Corp.*, 2009 WL 9083282, at *4 (E.D. Pa. Mar. 30, 2009) (citing *Elliott* in refusing to make a connection between evidence and a medical diagnosis because "federal courts are not medical specialists") (signals omitted). Similarly, the ALJ is not a medical doctor and her opinions are not to be substituted for medical evidence supporting or denying a disability; essentially, the ALJ must not make a medical judgment, but instead is charged with evaluating the evidence in accordance with correct legal standards. *Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir. 1985); *Smith v. Astrue*, 2012 WL 401504, at *4 (N.D. Ill. Feb. 3, 2012) (acknowledging that "ALJ is not a medical doctor and cannot, without supporting medical evidence, assess the functional ramifications of [medical records]"); *Stacy v. Chater*, 70 F.3d 1263 (4th Cir. 1995) (ALJ did not make a medical judgment nor exceed his authority); *see also Mathias v. Berryhill*, 2019 WL 1594340, at *16 (N.D. Ind. Apr. 15, 2019) ("ALJ is not a medical doctor, and his review of the medical evidence is not a substitute for review by a medical expert"). This said, much like the court in *Achey* cited above, this Court is

similarly hesitant to make a connection between the medical evidence of record and a medical diagnosis concerning whether Plaintiff's spinal impairments satisfy Listing 1.04 – likewise, we cannot see how the ALJ definitively ruled out this connection in relation to Listing 1.04 unless the ALJ impermissibly crossed the line into medical judgment instead of a mere evaluation of the evidence.

The listings set forth the criteria for qualifying impairments. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citing 20 C.F.R. § 404.1525(a)). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than [a] perfunctory analysis of the listing." *Id.* Plaintiff "has the burden to present medical findings that match or equal in severity all the criteria specified by a listing." *Knox v. Astrue*, 327 Fed.Appx. 652, 655 (7th Cir. 2009) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).

Listing 1.04 requires a disorder of the spine resulting in a compromise of a nerve root or the spinal cord with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 (A).

In his briefs, Plaintiff details medical evidence of record which he claims shows he has a disorder of the spine resulting in compromise of a nerve root, evidence of neuro-anatomic distribution of pain, evidence of limitation of motion in the spine, evidence of motor loss, evidence of sensory or reflex loss, and evidence of a positive straight-leg raising test. [Dkt. 17, pp. 6-7; Dkt. 26, p. 2.] He argues he has met his burden of showing that he meets or medically equals Listing 1.04, and that the ALJ ignored the evidence that supported this conclusion. [Dkt. 17, pp. 5-8; Dkt. 26, pp. 2-4.]

Addressing Listing 1.04 in her decision, the ALJ stated, in full:

> The claimant does not meet or equal the requirements for nerve root compression in listing 1.04 because the medical record does not show regular treatment for the claimant's back within the relevant period, and during his consultative examination, he denied experiencing lower back pain and reported experiencing neck pain only occasionally to

6

rarely. Dr. Karri observed that the claimant could get on and off thee examination table and his grip strength was at a level of five out of five on his right and four out of five on his left. The claimant could button, zip, and untie his shoelaces, he could make fists and oppose his fingers, and his range of motion in his shoulders, elbows, and wrists was normal. Range of motion in his hips, knees, and lumbar spine was also normal, straight leg raising was negative, and his strength was at a level of five out of five in his upper extremities overall, four out of five in his left lower limb, and four plus out of five in his right lower limb. Furthermore, the claimant does not meet or equal listing 1.04's requirements for spinal stenosis because he is able to ambulate (walk) effectively. Dr Karri observed that the claimant did not bring a cane to his examination and he could walk 50 feet without support. The claimant also testified that he uses a cane for ambulation and he took the train to the hearing independently.

[R. 23 (record citations omitted).]

Plaintiff argues, however, that the ALJ almost exclusively relied on the consultative examination findings[4] while ignoring other medical records that specifically support a finding that Plaintiff meets Listing 1.04. [Dkt. 17, pp. 6-7.] It appears the only contention as to the actual listing is whether the record indicates evidence of decreased range of motion in Plaintiff's lumbar spine (*compare*, Defendant's response brief at dkt. 25, p. 4, *with*, Plaintiff's reply brief at dkt. 26, p. 2). Defendant's argument on this point is that Plaintiff "cites no evidence of decreased range of motion in his lumbar spine." [Dkt. 25, p. 4.] Plaintiff replies with clear record findings of limitation in Plaintiff's lumbar spine, which the ALJ did not acknowledge. While Plaintiff points toward one record showing pain but no loss of lumbar flexion [R. 735], the other record Plaintiff points to very clearly details moderate loss of lumbar movement upon three different actions (slideglide right, slideglide left, and extension) as well as minimal loss of lumbar movement upon flexion, with each of the four movements accompanied by pain. [R. 747.] Is this decreased lumbar range of motion related to a compressed lumbar nerve root such that Plaintiff would meet Listing 1.04? That is not for this Court to say, not being a medical doctor. Nor was it for the ALJ to say it was unrelated (or leave it unaddressed, as she did), in the absence of a medical opinion on the subject.

---

4     The ALJ did rely on the consultative examination findings almost singularly, save for the last sentence of her Listing 1.04 analysis, which relied on Plaintiff's Administrative Hearing testimony.

Moreover, Plaintiff details a trove of other information the ALJ failed to mention *in connection with* her Listing 1.04 analysis, although she may have touched upon some of it elsewhere in her decision. Specifically, Plaintiff details the following as part of his Listing 1.04 supporting evidence:

- That Plaintiff's medical records include an MRI showing compromise of a nerve root and an MRI showing a "bulging disc at L4--L5 [that] abuts the bilateral L5 nerve roots."
- That the consultative examination also shows a small-stepped, wide-based gait; an inability to tandem walk, heel/toe walk, and squat; an inability to feel his ankles; decreased range of motion in his cervical spine; tenderness in his legs; sensitivity and decreased strength in his legs; decreased pinprick sensations in his legs; and a positive Romberg test.
- That neurological examinations by Dr. Aggarwal show decreased motor strength in the intrinsic muscles, decreased pinprick sensation from his toes to mid-tibia, absent vibration in his feet, reduced proprioception in his toes, reduced temperature from his toes to mid-tibia, positive Romberg tests, an inability to heel/toe walk and tandem walk, an antalgic gait, and decreased reflexes to his ankles.
- That an emergency room physical exam showed tenderness to the lumbar area with pain transferred to the left lower extremity and a positive bilateral strait leg raising test.
- That a physical therapy assessment showed deficits in gait speed, standing balance, distal lower extremity strength, and range of motion and "weak core muscle strength" that was consistent with "soft tissue impairment."
- That Plaintiff testified he experiences a sharp pain in his back and has difficulty bending, that he can only stand for five to ten minutes before his legs start to shake, that he can only sit for ten to fifteen minutes before his legs get numb, and that he has difficulty walking and climbing stairs due to leg weakness.

[dkt. 17 at pp. 6-7 (record citations omitted)]

The fact that this information was omitted from the ALJ's Listing 1.04 analysis, despite perhaps mentioning it elsewhere in her decision, is a crucial distinction. We borrow language from a fellow court within our circuit when we too find that:

> The ALJ's analysis of this evidence is limited to [other Steps in the ALJ's decision.] In other words, while the ALJ discussed some of the medical evidence in terms of whether [Plaintiff] should be limited to certain types of work, she did not first address that evidence to see whether it indicated [Plaintiff] met Listing 1.04. Indeed, it would have been possible for the ALJ to conclude [Plaintiff] still did not meet Listing 1.04, despite the evidence set forth above, if other, contradictory evidence is in the record. But the ALJ did not discuss this evidence at all in connection with Listing 1.04, so the Court cannot discern whether she considered it and, if so, why she rejected it. In short, the ALJ did not adequately address whether [Plaintiff] met Listing 1.04, and remand is warranted for that reason.

*Kelley v. Berryhill,* 2017 WL 1133716, at *6 (S.D. Ind. Mar. 27, 2017); *see also*, *Kavadius v. Barnhart*, 306 F.

Supp. 2d 804, 813 (N.D. Ill. 2004) (citing *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir.2002) ("[b]y failing to discuss this evidence in light of the listing's analytical framework, 'the ALJ has left this court with grave reservations as to whether his factual assessment addressed adequately the criteria of the listing.'"); *Deal v. Barnhart*, 2003 WL 22247185, at *18 (N.D. Ill. Sept. 30, 2003) ("unwilling to find that the ALJ's finding is supported by substantial evidence when he did not address the evidence in light of the relevant listing."). In sum, we do not feel the ALJ has met her charge of an adequate evaluation of the evidence in assessing whether Plaintiff meets Listing 1.04. Remand is required in this matter.

## IV. Conclusion

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Likewise, as the Court is not a medical specialist, we cannot opine as to whether the medical evidence detailed herein indicates Plaintiff does, in fact, meet Listing 1.04; this is an issue to be more thoroughly addressed on remand. Plaintiff's motion for summary judgment [dkt. 17] is granted; the Commissioner's motion for summary judgment [dkt. 24] is denied.

Entered: 9/9/2019

_____

Susan E. Cox,
United States Magistrate Judge